UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

VAN ROBALA GARRETT,

               Petitioner,

                                        **CIVIL ACTION NO. 2:05cv323**
v.                                **[ORIGINAL CRIMINAL NO. 2:03cr59]**

UNITED STATES OF AMERICA,

               Respondent.

## OPINION AND FINAL ORDER

This matter comes before the court on petitioner Van Robala Garrett's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255.  For the reasons set forth below, the motion is **DENIED**.

## I. Factual and Procedural History

On January 21, 2004, Garrett was charged in a superceding indictment with four counts of access device fraud, in violation of 18 U.S.C. § 1029(a)(5), (c)(1)(A)(ii); one count of fraudulent use of credit cards, in violation of 18 U.S.C. § 1644(a); and thirty-four counts of theft of public money, in violation of 18 U.S.C. § 641.  These charges are based on allegations that Garrett, doing business as Total Electrical Sales, Inc., obtained customers' credit card numbers and then used Cardservice International, later known as First Data Corp., a company that facilitates credit card transactions between merchants and their customers, to facilitate unauthorized transfers of funds from the customers' credit card

accounts to Total Electrical Sales, Inc.'s checking account.[1]   On March 19, 2004, Garrett pled guilty, pursuant to a written plea agreement, to Count One of the superceding indictment charging him with access device fraud involving the unauthorized use of a credit card number issued by Citibank and assigned to Doris Hamler, the authorized purchasing agent for the Public Works Center at the Naval Weapons Station in Yorktown, Virginia.  Garrett's plea of guilty to this charge exposed him to statutory penalties of not more than 15 years imprisonment, not more than a $250,000 fine, not more than three years of supervised release, and a mandatory order of restitution to the victims of the offense for the full amount of the victims' losses.  See 18 U.S.C. §§ 1029(a)(5), (c)(1)(A)(ii), 3663A (a)(1), (c)(1), (d), 3664(f)(1)(A).  Pursuant to his written plea agreement, Garrett waived his right to appeal the conviction and any sentence within the statutory maximum, and he agreed to entry of a restitution order for the full amount of the victims' losses.  See Plea Agreement at 2-3, ¶¶ 4, 7.

A presentence investigation report ("PSR") was prepared on May 19, 2004, and an addendum was prepared on June 15, 2004.  The

_____

[1] Total Electrical Sales, Inc. contracted with Cardservice International to facilitate its credit card transactions with all its customers.  See Presentence Investigation Report ("PSR") at 4, ¶ 4.  The credit card numbers used in the unauthorized transactions charged in the superceding indictment were assigned to employees of the United States Department of the Navy and associated with accounts paid by the Department of the Navy.  The total amount of unauthorized transactions charged in the superceding indictment exceeds $125,000.00.

PSR assigned Garrett a guidelines range of 18 to 24 months, which reflected a three level reduction in offense level for acceptance of responsibility. <u>See</u> PSR at 16-17, ¶¶ 59-61, Worksheet D. The PSR calculated that the victims of Garrett's unauthorized use of the credit card number issued by Citibank and assigned to Doris Hamler, First Data Corp. (previously known as Cardservice International) and Norfolk Public Works Center, suffered actual losses in the amounts of $16,871.84 and $2,487.00, respectively, and recommended an order of $19,358.84 in restitution, representing the full amount of the victims' losses. <u>See id.</u> at 16, 28, ¶¶ 54, 113. At his sentencing hearing held on June 25, 2004, Garrett raised no objections to either the calculation of his guidelines range or the amount of the victims' losses set forth in the PSR.[2] Hearing no objections to the PSR from the government, and granting its motion for the third level reduction in offense level for acceptance of responsibility, <u>see</u> U.S.S.G. § 3E2.1(b), the court adopted the PSR in full and sentenced Garrett to 18 months

---

[2]Garrett withdrew an objection regarding the amount of monthly income stated in the PSR, because he was unable substantiate his claim that the amount should be reduced to reflect his expenses for materials. <u>See</u> Transcript of Proceedings held on June 25, 2004 (filed on October 14, 2005) (hereinafter "6/25/04 Tr.") at 3. Garrett raised an objection to the amount of child support arrearage cited in the PSR, but acknowledged an inability to present sufficient evidence to support his claim that the amount should be less than that cited. <u>See id.</u> at 3-6. The court found that the amount of arrearage did not, in any event, affect the calculation of his sentence, and adopted the amount cited in the PSR. <u>See id.</u> at 5-6.

imprisonment, three years supervised release, and $19,358.84 in restitution, with $16,871.84 to be paid to First Data Corp. and $2,487.00 to be paid to Norfolk Public Works Center.[3]

Garrett did not file a direct appeal. He timely initiated proceedings under 28 U.S.C. § 2255 (providing a one-year limitations period for motions filed under the section).[4]  In his § 2255 motion, Garrett alleges the following grounds for relief: (1) his trial counsel's assistance was ineffective because counsel failed to file a notice of appeal; (2) the prosecution failed to disclose that Citibank, the bank that issued the credit card number assigned to Doris Hamler, had no record of transactions between

---

[3] A fine and the interest on the restitution were waived and the court entered a Restitution Order setting forth the amount, manner, and schedule of restitution payments. See 6/25/04 Tr. at 12-13.

[4] Garrett filed a document, subject to defect, on May 25, 2005.  The court construed the document as an attempt to file a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, but found it not substantially in the form annexed to the rules governing proceedings under § 2255, so the court entered an order on June 1, 2005, directing Garrett to submit his claims in proper form if he wished to proceed under § 2255.  On June 8, 2005, Garrett filed a Preliminary Statement for a Writ of Habeas Corpus Pursuant to Rule 28 U.S.C. § 2255.  The court determined that Garrett's Preliminary Statement was a motion under § 2255 and entered an order on June 14, 2005, directing the government to respond to the motion.  On June 24, 2005, Garrett filed a Motion to Dismiss his Preliminary Statement so that he could refile on the proper form.  By order entered on July 7, 2005, the court treated Garrett's Motion to Dismiss as a motion to amend, noting that dismissal of his motion risks his claims being barred by the one-year limitations period, and then granted his motion to amend.  Garrett then submitted the instant claims in proper form on August 5, 2005.

Total Electrical Sales, Inc. and Doris Hamler; (3) a downward
departure should have been recommended because Citibank had no
record of transactions between Total Electrical Sales, Inc. and
Doris Hamler; and (4) the amount of restitution owed to Cardservice
International, later known as First Data Corp., should be reduced
to $7,000.00, the amount agreed to by Cardservice International.
See Mot. Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct
Sentence by a Person in Federal Custody (hereinafter "Pet'r's
Mot").   The government filed a response on October 21, 2005,
arguing that Garrett's § 2255 motion should be denied, because his
ineffective assistance of counsel claim is without merit, and his
remaining claims, all procedurally defaulted, cannot be pursued in
a § 2255 motion and, in any event, are without merit.  See Resp. of
the United States to Pet'r's Mot. to Vacate, Set Aside, or Correct
Sentence (hereinafter "Gov't's Resp.").   Garrett replied on
November 17, 2005, to which reply he attached a letter from
Cardservice International purportedly confirming its acceptance of
$7,000.00 in settlement towards the balance owed by Garrett and
Total Electrical Sales, Inc.   See Pleading to the Magistrate's
Order Here in After a Mot. Show Cause (hereinafter "Pet'r's
Reply").  The government responded on January 10, 2006, to which
response it attached a letter from Cardservice International
stating that it was unaware of the court order of restitution in
this case and its letter to Garrett regarding settlement was sent

5

in error.  See Resp. of the United States to Pet'r's Proposed Order (hereinafter "Gov't's 1/10/06 Resp."); see also Order, entered January 13, 2006, at 2 n.4 (construing the government's January 10, 2006, filing as a response to Garrett's Pleading to the Magistrate's Order Here in After a Motion Show Cause, filed on November 17, 2005).

Since filing his § 2255 motion, Garrett has been released from imprisonment, but he is still subject to a three-year term of supervised release, the ramifications of his felony conviction, and the order of restitution.[5]  Therefore, his § 2255 motion is not moot.  See Spencer v. Kemna, 523 U.S. 1, 7-8 (1998) (holding that once a habeas petitioner is released from incarceration, some concrete and continuing injury other than the now-ended

---

[5] On December 23, 2005, Garrett filed a Proposed Order pro se and subject to defect.  In this filing, Garrett requests the court to modify a special condition of his supervised release that prevents him from engaging in any self-employment where he would have access to an individual's personal or credit card information so that he may operate Total Electrical Sales, Inc.  Finding that Garrett presented no evidence in support of his request for modification, the court entered an order on January 13, 2006, denying Garrett's request and advising him that any further requests for modification of the conditions of his supervised release should come through the probation office.  On March 10, 2006, Garrett, represented by counsel, filed a motion requesting modification of the same condition of supervised release to allow him to operate Total Electrical Sales, Inc.  Determining that Garrett's representations concerning his grounds for modification were inaccurate, the court entered an order on March 16, 2006, denying the motion and declaring that it would not alter this condition of Garrett's supervised release considering Garrett's conviction in this court of committing access device fraud while operating Total Electrical Sales, Inc.

incarceration must exist if the habeas suit is to be maintained); Jones v. Cunningham, 371 U.S. 236, 241-43 (1963) (holding that a habeas suit attacking a conviction is not mooted by the petitioner's release from incarceration where he is subject to a term of parole, which conditions significantly confine and restrain his freedom); Broughton v. N.C., 717 F.2d 147, 148-49 (4th Cir. 1983) (holding that a habeas suit attacking a conviction will remain a live controversy despite the petitioner's release from custody where the conviction results in a continued denial of important civil rights or may result in an enhanced sentence should the petitioner later be convicted of another crime). Garrett's motion is ripe for decision.

## II. Analysis

A prisoner seeking to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, must prove that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 proceeding is a civil collateral attack upon a judgment of conviction, the burden of proof is upon the movant to establish his grounds for § 2255 relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). While

7

a pro se movant is entitled to have his arguments reviewed with appropriate consideration, see Gordon v. Leeke, 574 F.2d 1147, 1151-53 (4th Cir. 1978), if the § 2255 motion, along with the files and records of the case, conclusively shows that he is entitled to no relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255.

Collateral review under § 2255 is not a substitute for direct appeal, which is the proper procedural avenue for raising most claims of trial error. See Sunal v. Large, 332 U.S. 174, 177 (1947). Errors that should have been but were not pursued on direct appeal are procedurally defaulted and may not be pursued in a § 2255 motion unless the movant shows both cause excusing his default and actual prejudice resulting from the errors of which he complains. United States v. Frady, 456 U.S. 152, 167-68 (1982); United States v. Maybeck, 23 F.2d 888, 891 (4th Cir. 1994).[6]

---

[6] A defaulted claim may be pursued in a § 2255 motion without a showing of cause and actual prejudice, if the movant demonstrates that a "miscarriage of justice" would result from the court's refusal to entertain the claim. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). To demonstrate that a miscarriage of justice would result from the court's refusal to entertain the claim, the movant must show actual innocence by clear and convincing evidence. Id. at 493-94 ("Typically, to establish actual innocence a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that petitioner is legally, but not factually, innocent"). The actual innocence exception has limited application outside the capital context, see id. at 494-95, and Garrett does not allege or present evidence of his actual innocence of the access device fraud to which he pled guilty. Accordingly, the actual innocence exception to the procedural-default rule is

Ineffective assistance of counsel, unique among errors, is more properly reviewed in a collateral proceeding, rather than on direct appeal. See United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991). As such, an ineffective assistance of counsel claim is not procedurally defaulted if not pursued on direct appeal and may be raised for the first time in a § 2255 motion without a showing of cause and actual prejudice. Massaro v. United States, 538 U.S. 500, 504-09 (2003). Ineffective assistance may be established by showing that counsel's performance was professionally unreasonable and resulted in prejudice to the defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984). If established, counsel's ineffective assistance may be cause excusing the movant's default of defaulted claims raised in his § 2255 motion. Murray v. Carrier, 477 U.S. 478, 488 (1986).

## A.   Ineffective Assistance of Counsel

Garrett contends that his counsel's assistance was ineffective, and in support of this contention, he offers a single allegation that counsel "fail[ed] to file an notice of appeal within 10-day period," and a citation to Rodriquez v. United States, 395 U.S. 327 (1969). See Pet'r's Mot. at 5. While the Constitution unquestionably grants a criminal defendant the right to the assistance of counsel in his defense, Strickland, 466 U.S. at 687, the Supreme Court has not held, in Rodriquez or otherwise,

─────────────────────

inapplicable here.

that counsel's failure to file a notice of appeal always deprives the defendant of this right.  See Rodriquez, 395 U.S. at 329-32 (holding that the failure of counsel to file an appeal as requested by the defendant constitutes a deprivation of the defendant's right to appeal, entitling the defendant to reinstatement of his appeal rights); see also Pequero v. United States, 526 U.S. 23, 28 (1999) (concluding that Rodriquez's holding is not implicated where the defendant did not request an appeal).  In fact, the Court expressly rejected such a  per se rule in Roe v. Flores-Ortega, 528 U.S. 470 (2000), declaring that counsel's failure to file a notice of appeal is constitutionally ineffective assistance only if the defendant demonstrates, in accordance with Strickland, 466 U.S. at 687, that counsel's conduct was professionally unreasonable and resulted in prejudice to the defendant.  See 528 U.S. at 476-78 (rejecting the rule, adopted by the Courts of Appeals for the First and Ninth Circuits, that counsel must file a notice of appeal unless the defendant specifically instructs otherwise).

Flores-Ortega explained that if the defendant specifically instructed counsel to file a notice of appeal, then counsel's disregard of the defendant's specific instruction is professionally unreasonable under Strickland because it "reflects inattention to the defendant's wishes."  Id. at 477.  Counsel's failure to file a notice of appeal, under these circumstances, presumably resulted in prejudice to the defendant, because it deprived the defendant of

the appellate proceeding.  Id. at 483-84.  Flores-Ortega further
held that circumstances besides a defendant's specific instruction
may render counsel's failure to file a notice of appeal
professionally unreasonable:  namely, when counsel had a
constitutionally imposed duty to consult with the defendant
regarding appeal and failed to do so.  See id. at 478-80.
Prejudice to the defendant will not, however, be presumed to result
from counsel's neglect of a constitutional duty to consult.  The
defendant must affirmatively show prejudice by demonstrating either
that (1) there were nonfrivolous grounds for appeal or (2) he
demonstrated to counsel his interest in appealing and had counsel
adequately consulted with him regarding appeal, he would have
instructed counsel to file an appeal.  See id. at 484-86; see also
Frazer v. South Carolina, 430 F.3d 696, 707-08 (4th Cir. 2005).

Garret has alleged no facts, which, if true, would render his
counsel's failure to file a notice of appeal constitutionally
ineffective assistance.  He has not alleged that he specifically
instructed counsel to appeal, nor has he alleged that counsel
failed to consult with him regarding appeal.  See Pet'r's Mot. at
5.[7]  Garrett has not demonstrated nonfrivolous grounds for appeal,

---

[7] Garrett's trial counsel stated, in a declaration attached to
the government's response to Garrett's motion, that Garrett was
well aware that he waived appeal pursuant to his plea agreement, he
seemed satisfied with the sentence that he received, and at no time
did he request an appeal or indicate a wish to appeal his
conviction or sentence.  See Gov't's Resp. Attach. (Declaration of
Franklin A. Swartz, Attorney).  Garrett offers no allegation or

see infra Parts B.-D., (dismissing on the merits Garrett's other grounds for § 2255 relief), nor has he alleged that he ever demonstrated to counsel an interest in appealing. Since Garrett has alleged no fact that supports his contention of ineffective assistance of counsel, he cannot obtain § 2255 relief on this ground.

Construing Garrett's motion liberally, see Gordon, 574 F.2d 1151-53, his counsel's ineffective assistance is the only alleged cause for his default of his remaining grounds for § 2255 relief, which grounds should have been but were not pursued on direct appeal. Accordingly, the defeat of Garrett's ineffective assistance of counsel claim necessarily prevents him from pursuing these grounds in his § 2255 motion. See Frady, 456 U.S. at 167-68. Even if Garrett could overcome this procedural bar, the allegations in his motion are legally insufficient to entitle him to relief.

## B.   Non-disclosure of Evidence

Garrett alleges that the prosecution failed to disclose that Citibank had no record of transactions between Total Electrical Sales, Inc. and Doris Hamler, and he cites Brady v. Maryland, 373 U.S. 83 (1963). See Pet'r's Mot. at 6. Brady, and its progeny, hold that the prosecution deprives a criminal defendant of his right to a fair trial, guaranteed by the Due Process Clause of the Fifth Amendment, when it suppresses impeachment or exculpatory

---

evidence to refute this declaration of his trial counsel.

evidence that is material to either the guilt or punishment of the defendant.  See  Strickler v. Greene, 527 U.S. 263, 280-82 (1999); United States v. Bagley, 473 U.S. 667, 674-76 (1985); Brady, 373 U.S. at 87.  The right announced in Brady has been described by the Court as a "trial-related right[]."  See United States v. Ruiz, 536 U.S. 622, 631 (2002).  Reasoning that a defendant who pleads guilty necessarily foregoes his or her right to a fair trial, the Court in United States v. Ruiz held that due process considerations do not require the prosecution to disclose material impeachment information prior to entering into a plea agreement with the defendant.  See id. at 628-33.  The Court did not, however, address whether a violation of Brady occurs when the prosecution suppresses material exculpatory evidence at the plea stage.  Compare id. at 631 (indicating a distinction between impeachment information and evidence of actual innocence) with id. at 633-34 (Thomas, J., concurring) (asserting that "[t]he principle supporting Brady was avoidance of an unfair trial to the accused [and] [t]hat concern is not implicated at the plea stage regardless" (internal quotation marks and citation omitted)).

Even assuming that Brady requires the prosecution to disclose material exculpatory evidence at the plea stage, the evidence at issue here is not of a kind required to be disclosed.  First, Citibank had no record of transactions between Total Electrical Sales, Inc. and the credit card account assigned to Hamler because

Hamler's account had been closed.  See PSR at 4, ¶ 7.  The closure of an account and the bank's failure to retain records of that account's activity is information likely available to a defendant through reasonable investigation, and is not, therefore, "suppressed" under Brady.  See Stockton v. Murray, 41 F.3d 920, 927 (4th Cir. 1994) (holding that "Brady does not compel the disclosure of evidence available to the defendant from other sources, including diligent investigation by the defense"); United States v. Wilson, 901 F.2d 378, 381 (4th Cir. 1990) (holding that "where the exculpatory information is not only available to the defendant but also lies in a source where a reasonable defendant would have looked, a defendant is not entitled to the benefit of the Brady doctrine").[8]  Second, the nonexistence of Citibank records of Hamler's account's activity is not "exculpatory" under Brady because it is not evidence that transactions did not occur between Total Electrical Sales, Inc. and Hamler's account.

Finally, the nonexistence of Citibank records of Hamler's account's activity is not "material" under Brady, because evidence of the date and amount of the unauthorized transactions between

---

[8] The government contends that it provided Garrett all the discovery that it had, and by not receiving Citibank records of Hamler's account activity, Garrett should have realized that the government was not in possession of such records.  See Gov't's Resp. at 12-13.  Garrett does not allege that he inquired whether the government possessed any such records, and the government claims that Garrett made no requests regarding such records.  See id. at 12.

Total Electrical Sales, Inc. and Hamler's account did exist.  See
Bagley, 473 U.S. at 682 (holding that "evidence is material only if
there is a reasonable probability that, had the evidence been
disclosed to the defense, the result of the proceeding would have
been different"); see also PSR at 4-12, ¶¶ 7-8, 10, 12-14, 17, 19,
22-38 (detailing the date and amount of unauthorized transactions
by Total Electrical Sales, Inc. using Hamler's credit card number
based on information obtained from Cardservice International, the
Naval Criminal Investigative Service, and the government's file).
In addition, the thirty-nine count superceding indictment against
Garrett charges him with unauthorized use of several customers'
credit card numbers besides Hamler's.  See supra at 1-2 & n.1.[9]
Garrett does not allege, nor is it reasonable to believe, that he
would not have pled guilty to one count of access device fraud
involving the unauthorized use of Hamler's credit card number, and
would have insisted on going to trial on the thirty-nine count
superceding indictment, had the prosecution disclosed the
nonexistence of Citibank records of Hamler's account's activity.[10]
Brady simply does not require the prosecution to disclose the

---

[9] Evidence of the date and amount of these unauthorized
transactions existed as well.  See PSR at 5-8, 12-15, ¶¶ 9, 11, 15-
16, 18, 20-21, 39-40, 43-52.

[10] Garrett does not challenge the factual basis for his plea
or the voluntary and intelligent character of his plea, nor does he
assert his actual innocence of the access device fraud to which he
pled guilty.  See supra note 6.

nonexistence of these records; therefore, Garrett's <u>Brady</u> claim must be dismissed.

## C.   Downward Departure

Garrett asserts that a downward departure should have been recommended because Citibank had no record of transactions between Total Electrical Sales, Inc. and Hamler's account, and he cites <u>United States v. Ruiz</u>, 536 U.S. 622 (2002), in support of this assertion.  <u>See</u> Pet'r's Mot. at 8.  As discussed <u>supra</u> Part B., <u>Ruiz</u> held that the Constitution does not grant criminal defendants a right to receive material impeachment information from the prosecution before they enter into a plea agreement with the government.  <u>See</u> 536 U.S. at 628-33.  This issue arose from a waiver of such a "right" contained in a plea agreement offered to, but not accepted by, the defendant in that case.  <u>See</u> <u>id.</u> at 625-26, 628.  The Court, in reciting the facts of the case, mentioned the other terms of the plea agreement, which included an agreement by the government to recommend a two-level departure downward from the applicable guidelines range.  <u>See</u> <u>id.</u> at 625.  This term of the plea agreement was not at issue in <u>Ruiz</u>, nor is it relevant to the Court's holding.  <u>See</u> <u>id.</u> at 628-33.  Garrett's own plea agreement imposes no obligation on the government to recommend a downward departure or pursue a reduction of his sentence.  <u>See</u> Plea Agreement.  Garrett does not allege that he has provided substantial assistance to the government, and the nonexistence of

16

Citibank records of Hamler's account's activity is not mitigating evidence warranting either recommendation of a downward departure or exercise of the court's discretion to grant a downward departure in this case.  Since Garrett has alleged no meritorious basis for a recommendation of downward departure, his claim must be dismissed.

**D.   Restitution**

Garrett claims that the amount of restitution that the court ordered him to pay to Cardservice International, later known as First Data Corp., should be reduced from $16,871.84, the actual amount of Cardservice International's losses, to $7,000, the amount that Garrett and Cardservice International allegedly agreed to in settlement of its losses, and Garrett cites United States v. Scarano, 975 F.2d 580 (9th Cir. 1992), in support of this claim. See Pet'r's Mot. at 9; Pet'r's Reply Attach. (Letter purportedly from Cardservice International confirming its acceptance of $7,000.00 in settlement towards the balance owed by Garrett and Total Electrical Sales, Inc.).[11]  Scarano, however, neither applied the restitution statute applicable to Garrett, nor did it consider the effect of a private settlement agreement on the amount of court-ordered restitution.  See 975 F.2d at 584-85 & n.7 (applying the version of the Victim and Witness Protection Act in effect

---

[11]Garrett does not dispute that $16,871.84 is the actual amount of loss suffered by Cardservice International, also known as First Data Corp.

17

prior to the 1990 amendments to the act to uphold the lower court's order of restitution, because the amount of restitution did not exceed the loss specified in the counts of conviction).  <u>Scarano</u>, therefore, provides no support for Garrett's claim that the amount of court-ordered restitution should be reduced from the full amount of Cardservice International's losses to a lesser amount agreed to by Cardservice International in settlement.  Even if Cardservice International entered into an agreement with Garrett for an amount less than the full amount of its losses,[12] this fact would not entitle Garrett to a reduction in the amount of restitution that the court ordered Garrett to pay to this victim.

Garrett is subject to the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. §§ 3663A, 3664, which makes restitution mandatory for certain offenses, including access device fraud.  <u>See</u> 18 U.S.C. § 3663A(a)(1),(c)(1);  <u>United States v. Davenport</u>, — F.3d. –, No. 05-4304, 2006 WL 1044476, at *6 (4th Cir. Apr. 21, 2006) (observing that the MVRA required the district court to order restitution for defendant's conviction of access device fraud, in violation of 18 U.S.C. § 1029); <u>United States v. Alalade</u>, 204 F.3d

---

[12] For the purposes of deciding Garrett's motion, the court assumes the truth of Garrett's allegation that Cardservice International entered into a settlement agreement with Garrett, but notes that the government has presented evidence refuting the truth of this allegation.  <u>See</u> Gov't's 1/10/06 Resp. App. A (Letter from Cardservice International stating that it was unaware of the court order of restitution in this case and its letter to Garrett regarding settlement of the amount owed was sent in error).

536, 537-38 (4th Cir. 2000) (same).  If subject to the MVRA, the defendant must make restitution to the victims of the offense, "in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant."  18 U.S.C. §§ 3663A(d), 3664(f)(1)(A).  While the MVRA does require that the amount of restitution be reduced by any amount that the victim recovers in a civil proceeding as compensatory damages for the same loss, see 18 U.S.C. § 3664(j)(2), the MVRA contains no provision for reduction of the amount of restitution based on a civil settlement agreement with the victim under which the defendant is to pay less than the full amount of the victim's losses.  Without such a provision in the MVRA, the court lacks discretion to order restitution in an amount less than the full amount of the victims' losses.  See Adalade, 204 F.3d at 540-41 (holding that the district court lacked discretion under the MVRA to order restitution in an amount less than the full amount of the victims' loss by allowing an offset for the value of fraudulently obtained property the government seized from the defendant and retained in administrative forfeiture).

Notwithstanding the MVRA requirement of full restitution, Garrett expressly agreed to pay restitution for the full amount of the victims' losses and acknowledged this obligation under oath during his plea colloquy, thus foreclosing an argument that he should be allowed to pay less than the full amount of the victims'

losses, even if agreed to by one of the victims.  See United States
v. Pappas, 409 F.3d 828, 829-31 (7th Cir. 2005) (holding that
defendant's agreement, pursuant to a written plea agreement, to pay
full restitution to the victim of the offense precludes an argument
that the MVRA permits entry of a restitution order for a lesser
amount allegedly agreed to by the victim in a civil settlement with
the defendant).  Garrett agreed, pursuant to his written plea
agreement, to pay restitution "for the full amount of the victims'
losses," and the loss to First Data Corp. was estimated, at that
time, to be greater than the amount that Garrett was ordered to pay
First Data Corp., pursuant to the Restitution Order.  See Plea
Agreement at 3, ¶ 7 (estimating $17,685.19 in losses to First Data
Corp.); Restitution Order, filed on June 25, 2004 (ordering Garrett
to pay First Data Corp. $16,871.84 based on the calculation of
actual loss set forth in the PSR at 16, ¶ 54).  Garrett represented
twice under oath during his plea colloquy that he understood that
by pleading guilty to access device fraud he must make full
restitution to all the victims of his offense, whatever the amount.
See Transcript of Proceedings held on March 19, 2004 (filed on
October 14, 2005) at 8-9, 11.[13]  Moreover, at his sentencing
hearing, Garrett offered no allegations or evidence of a private
settlement agreement with Cardservice International, and he raised

---

[13] The voluntary and intelligent character of his plea is not
challenged.  See supra notes 6 and 10.

no objection to the Restitution Order.  See Transcript of Proceedings held on June 25, 2004, (filed on October 14, 2005) (hereinafter "6/25/04 Tr.") at 6-7.[14]

Since both the MVRA and Garrett's plea agreement require an order of restitution for the full amount of the victim's losses, Garrett's claim that the amount of restitution owed to Cardservice International should be reduced to an amount less than the full amount of its losses must be dismissed.

### III. Conclusion

For the reasons stated above, Garrett's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 is **DENIED**. Garrett is **ADVISED** that he may appeal from this Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, 600 Granby Street, Norfolk, Virginia, 23510.  The written notice of appeal must be received by the Clerk within sixty (60) days of the date of this Opinion and Final Order.

The Clerk is **DIRECTED** to send a copy of this Opinion and Final Order to Garrett and to the Special Assistant United States Attorney.

---

[14] Garrett did not object at his sentencing hearing, nor does he challenge in this motion, the court's calculation of the full amount of loss to the victims, or the manner and schedule by which he was ordered to pay restitution, or the sufficiency of the court's factual findings of the amount, manner, or schedule of restitution payments.  See 6/25/04 Tr.

**IT IS SO ORDERED.**

/s/
_____
Rebecca Beach Smith

Norfolk, Virginia

June 12, 2006